IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS L. PAYNE, SID ARCHINAL, GARY H. KARESH, JO ANN KARESH, BELCA D. SWANSON AND MERLE K. SWANSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. McGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILLIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP, <br><br> Defendants. | <u>CLASS ACTION</u> <br><br> CA No. 02-1927 |

### **MEMORANDUM ORDER**

Pending before the Court are (1) a motion by Plaintiffs to lift the discovery stay imposed in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"), correctly filed at Docket No. 103, and (2) a motion by Defendants, seeking an order of Court to permit issuance of subpoenas to preserve certain documents relevant to discovery herein, filed at Docket No. 106. For the reasons discussed below, Plaintiffs' Motion is denied and Defendants' Motion is granted subject to certain

1

modifications discussed below.[1]

## I. BACKGROUND

The facts of this case are largely irrelevant to the pending motions and have been provided in the Court's previous Memorandum denying without prejudice Defendants' motion to dismiss the amended class action complaint. (*See* Docket No. 68, December 16, 2004, at 2-3.) Briefly stated, the named Plaintiffs filed an action on behalf of themselves and other investors similarly situated against the "Individual Defendants[2]" and The Carlyle Group[3] (collectively, "Defendants"), claiming that Defendants' actions on behalf of IT Group, Inc., violated federal securities law. IT Group, Inc. ("IT" or "the Company"), was an environmental waste remediation firm based in Monroeville, Pennsylvania. The Carlyle Group acquired control of IT in November 1996 and, at approximately the same time, the Company expanded rapidly by acquiring other firms who performed similar services. Plaintiffs claim that by the end of 2001, Defendants

---

[1] Although the Court originally intended to hold oral argument on Plaintiffs' Motion, a review of the extensive briefs submitted by the parties has led to the conclusion that this matter can be resolved without such a hearing.

[2] The Individual Defendants are Anthony J. DeLuca, Harry J. Soose, Francis J. Harvey, James C. McGill, Richard W. Pogue, Daniel A. D'Aniello, Philip B. Dolan, E. Martin Gibson, Robert F. Pugliese, and James David Watkins, each of whom is alleged to have been an officer or director of IT Group, Inc., during the Class Period.

[3] According to the Complaint, The Carlyle Group is a private merchant bank headquartered in Washington, D.C.

had made a number of poor financial and management decisions which, *inter alia*, resulted in liquidity problems and violation of the Company's highly lucrative government contracts. IT declared bankruptcy on January 15, 2002.

During the course of the bankruptcy proceedings, Plaintiffs learned that Defendants had consistently misrepresented IT's financial condition in annual and quarter filings made with the Securities and Exchange Commission, press releases, and other statements disseminated to the investing public. As a result, Plaintiffs and other investors were damaged when they purchased IT common stock at artificially inflated prices during the Class Period.[4] Plaintiffs did not learn of Defendants' fraudulent activities until March and April 2002 when the relevant documents were published in the bankruptcy proceedings.

**II.   THE PENDING MOTIONS**

    A.   <u>Plaintiffs' Motion to Lift the Discovery Stay</u>

At this point in time, the bankruptcy proceedings are nearing completion in the United States District Court for the District of Delaware. On October 21, 2005, the Trustee of the IT Group Litigation Trust[5] filed a motion with the bankruptcy court,

---

[4] The Class Period is defined in the Complaint as February 24, 2000, through January 15, 2002.

[5] According to Plaintiffs, when the IT business was sold to the Shaw Group, the litigation trust became IT's successor with a mandate to prosecute all legal claims, including preference claims and fraud/breach of duty claims against IT's former officers and directors. (Plaintiffs' Memorandum of Law in Support of Motion to

seeking approval of a proposed document retention plan. (*See* Declaration of Robert M. Zabb in Support of Motion to Lift the PSLRA Stay of Discovery, correctly filed at Docket No. 105, Exhibit H, IT Litigation Trust Trustee's Renewed Motion for Entry of an Order Authorizing Document Retention Procedures, "the Trustee's plan.")[6] According to Plaintiffs, the Trustee's plan - applicable to some 134,000 boxes of documents at 45 storage sites throughout the United States - would result in the irreversible loss of documents they need to prosecute this securities fraud action. As proposed in October, the plan would allow the Trustee to begin destroying documents as of December 31, 2005; the only documents the Trustee would retain would be those identified by an interested party prior to that date or those which the Trustee determined were relevant to its own pending litigation. Moreover, although Plaintiffs acknowledge the Trustee's plan allows them to access the documents through December 31, 2005, they claim such access would be meaningless because the Trustee has indicated it would not respond to document requests or otherwise assist Plaintiffs in identifying and locating documents relevant to this lawsuit. (Plaintiffs' Memorandum of Law in Support of Motion to Lift the PSLRA Stay of

---

Lift the PSLRA Stay of Discovery in Connection with Potential Destruction of Company Documents, Docket No. 104, at 1, note 1.)

[6] The Trustee refers to this document as a "document retention plan;" Plaintiffs refer to it as a "document destruction plan." We have used the title given by the Trustee.

4

Discovery in Connection with Potential Destruction of Company Documents, correctly filed at Docket No. 104, "Plfs.' Memo," at 1.) The Trustee's motion to approve its proposed document retention plan was scheduled to be heard by the bankruptcy court on November 16, 2005.[7]

On November 4, 2005, Plaintiffs filed a motion with this Court, seeking an order lifting the PSLRA stay of discovery pursuant to 15 U.S.C. § 78u-4(b)(3)(B) in the event the bankruptcy court approved the Trustee's plan. Specifically, Plaintiffs sought to have the stay "lifted as to discovery of documents in the custody of the Trustee, as well as to depositions to ascertain the nature and extent and location of the documents held by the Trustee which are relevant to this case." (Plaintiffs' Notice of Motion and Motion to Lift the PSLRA Stay of Discovery in Connection with Potential Destruction of Company Documents, correctly filed at Docket No. 103.) The only named deponent is Defendant Harry Soose, IT's former chief financial officer and now an employee of the Trustee, whom Plaintiffs identify as "the single person best situated to locate the financial and accounting documents" they need. They claim

---

[7] While the Motions which are the subject of this Memorandum were pending, the hearing on the document retention plan was continued until December 16, 2005, and then for an additional 30 days. The Trustee also agreed to postpone initiation of document destruction until January 31, 2006. (Plaintiffs' Reply Memorandum of Law in Support of Motion to Lift the PSLRA Stay of Discovery . . . and in Opposition to Defendants' Motion for Order Permitting Issuance of Subpoenas to Preserve Documents, Docket No. 101, at 24-25.)

5

that without this deposition, they would be playing "blindman's bluff" trying to locate relevant documents among the 134,000 boxes. (Plfs.' Memo at 1, note 3.)

Plaintiffs' motion is based on the PSLRA exception to the mandatory discovery stay imposed while a motion to dismiss is under consideration by the district court when such discovery is "necessary to preserve evidence or to prevent undue prejudice" to the plaintiff. (Plfs.' Memo at 2, citing 15 U.S.C. § 78u-4(b)(3)(B).)

B.  Defendants' Motion for an Order Permitting Issuance of Subpoenas to Preserve Documents

In response to Plaintiffs' motion, Defendants filed a motion based on an alternative plan to preserve the documents in question. (Defendants' Notice of Motion and Motion for Order Permitting Issuance of Subpoenas to Preserve Documents, Docket No. 106.) Defendants agree to a lifting of the stay imposed by the PSLRA, but only for the far more limited purpose of allowing subpoenas to be issued which would direct the Trustee to preserve the documents "for the duration of this litigation," but not require immediate document production. Further, the subpoenas would advise the Trustee that it would not have to respond until this Court has ruled on a pending Motion to Dismiss the Second Amended Complaint and lifted the stay. (Defendants' Memorandum of Law in Opposition to the Motion to Lift the PSLRA Stay . . . and in Support of Motion for Order Permitting Issuance of

6

Subpoenas to Preserve Documents, Docket No. 100, "Defs.' Memo.," at 1-2.)

Defendants agree with Plaintiffs that the all parties to this litigation have an interest in preserving the documents held by the Trustee, but contend that this interest will be adequately served by allowing Plaintiffs to issue preservation subpoenas. (Defs.' Memo. at 4-9.) They oppose a blanket order lifting the stay on discovery with regard to all documents held by the Trustee and permitting depositions, arguing that the PSLRA anticipates lifting the discovery stay only for "particularized" discovery. (Id. at 9.)

While acknowledging that protective subpoenas "would be better than nothing," Plaintiffs respond to Defendants' suggestion by arguing that (1) the Trustee, based on its past behavior, cannot be trusted to honestly comply with a protective subpoena and could easily claim to comply with its terms while proceeding unchecked in its drive to destroy documents; (2) the bankruptcy court itself is of no help in protecting Plaintiffs' interests because the court has previously indicated its inclination to approve the Trustee's plan; (3) protective subpoenas are not sanctioned by the PSLRA in that Congress provided only a single remedy for protecting evidence which may potentially be lost, i.e., lifting the discovery stay; and (4) contrary to Defendants' argument that the discovery request is

not sufficiently particularized, Plaintiffs seek to have the stay lifted only with regard to the 134,000 boxes in the Trustee's control, an amount which is not unreasonable in light of the magnitude of this case. (Plaintiffs' Reply Memorandum of Law in Support of Motion to Lift the PSLRA Stay of Discovery . . . and in Opposition to Defendants' Motion for Order Permitting Issuance of Subpoenas to Preserve Documents, Docket No. 101, "Plfs.' Reply," *passim*.)

### III. ANALYSIS

The PSLRA provides:

> In any private action arising under this title [15 U.S.C.S. §§ 78a *et seq*.], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B).

Defendants' Motion to Dismiss the Second Amended Complaint, filed on May 27, 2005, and now pending at Docket No. 73, thus mandates the stay Plaintiffs seek to have lifted.

The PSLRA further provides that "during the pendency of any stay of discovery . . . any party to the action with actual notice of the allegations contained in the complaint shall treat all documents . . . that are relevant to the allegations, as if they were the subject of a continuing request for production of documents for the opposing party under the Federal Rules of Civil

Procedure." 15 U.S.C. § 78u-4(b)(3)(C)(i). The statute provides for court-ordered sanctions if a party to the litigation willfully fails to comply with this preservation requirement. 15 U.S.C. § 78u-4(b)(3)(C)(ii). However, the statute does not address those situations in which a party to the litigation claims that relevant documents are held by a non-party.

We begin our analysis with the recognition that whatever action this Court takes is entirely contingent on the assumptions that (1) at its hearing in mid-January 2006, the bankruptcy court will approve the Trustee's plan to begin destroying documents as of January 31, 2006; and (2) destruction will begin immediately thereafter in an as-yet-undisclosed manner which will negatively affect both Plaintiffs and Defendants. We also begin with the assumption that Defendants' Motion to Dismiss the Second Amended Complaint will be decided by this Court within the next 60 days.

We have considered the arguments of both parties, together with the case law they cited. As an initial matter, we agree with Plaintiffs that some action must be taken to assure that documents held by the Trustee are retained until discovery, by both parties herein, can commence. However, we find that Plaintiffs' proposed motion which would allow them to begin unrestricted discovery of 134,000 boxes of documents scattered throughout the United States is not sufficiently particularized to meet the threshold requirement of 15 U.S.C. § 78u-4(b)(3)(B).

A discovery request meets the particularized requirement if it identifies the "specific types of evidence that fall within its scope," is "directed at specific persons" and "sufficiently limits the type of documents to be preserved." <u>Houlihan v. Andrews (In re Nat'l Century Fin. Enters.)</u>, 347 F. Supp.2d 538, 541 (S.D. Ohio 2004), *citing* <u>In re Tyco Int'l, Ltd., Sec. Litig.</u>, MDL No. 00-MD-1335-B *et al.*, 2000 U.S. Dist. LEXIS 11659, *12-*13 (D. N.H. July 27, 2000). In reaching this conclusion, we are not concerned with Plaintiffs' contention that 134,000 boxes of documents is a reasonable and "particularized" amount given the scope of this litigation, but rather with their acknowledgment that the indices prepared by the Trustee are relatively useless, that they cannot at this time identify even broad categories of documents, and that the deposition of at least one Individual Defendant is necessary in order to accomplish any meaningful discovery. This leads to the conclusion that Plaintiffs have not established a "clearly defined universe of documents," and could easily be off on a "fishing expedition" contrary to the intent of the PSLRA.[8] Moreover, even if we were inclined to lift the stay, it would be for the sole purpose of *preserving* the evidence as provided by statute inasmuch as that is one of the two purposes

---

[8] This aspect would be of special concern if the Court were to lift the stay, allow discovery, then permit Plaintiffs to file a third amended complaint which could incorporate information gleaned from that discovery.

10

stated by Congress for which such a motion might be granted. Although we agree that Plaintiffs would be unfairly prejudiced if the documents were indiscriminately destroyed before discovery could take place in this matter, Plaintiffs have failed to explain how - assuming the documents themselves are protected - they will be prejudiced if they are not permitted to immediately depose Mr. Soose.

In addition, we reject Plaintiffs' argument that because the PSLRA does not explicitly provide for issuance of protective subpoenas, our only alternative is to lift the stay entirely and allow them to proceed with discovery and depositions. One need only review the numerous cases considering protective subpoenas as an alternative to an outright lifting of the stay to recognize that courts throughout the country have adopted this much more limited method of preserving documents in the hands of third parties. *See*, e.g., Sedona Corp. v. Ladenburg Thalmann & Co., CA 03-3120, 2005 U.S. Dist. LEXIS 23905 (S.D. N.Y. Oct. 14, 2005) (lifting of the PSLRA stay was unnecessary inasmuch as plaintiff had been permitted to send preservation letters to ten non-parties); Houlihan v Andrews, *supra*. (granting plaintiffs' motion for leave to issue a document preservation subpoena to non-party where relevant documents would likely be destroyed because of that party's reorganization in bankruptcy); In re Cree, Inc. Sec. Litig., CA 03-549, 2004 U.S. Dist. LEXIS 5442 (M.D. N.C. Mar. 31,

2004) (quashing document preservation subpoenas because they had been issued without leave of court); <u>Vezzetti v. Remec, Inc.</u>, CA No. 99-796L, 2001 U.S. Dist. LEXIS 10462 (S.D. Cal. July 23, 2001) (granting *ex parte* application to issue subpoenas requiring non-parties to preserve documents); <u>Tyco Int'l, Ltd. Sec. Litig.</u>, *supra*. (third party subpoenas ordering preservation of evidence were appropriate if adequately particularized); <u>In re Carnegie Int'l Corp. Secs. Litig.</u>, 107 F. Supp.2d 676 (D. Md. 2000) (subpoena duces tecum served on non-party quashed as violative of PSLRA's stay of discovery, but court required non-party to preserve documents subject to subpoena); <u>Neibert v. Monarch Dental Corp.</u>, CA No. 3-99-762-X, 1999 U.S. Dist. LEXIS 22312 (N.D. Tex. Oct. 20, 1999) (granting plaintiffs' request to serve document preservation subpoenas to non-parties subject to the modification that the parties had no obligation to respond other than by preserving documents); and <u>In re Grand Casinos, Inc. Secs. Litig.</u>, 988 F.Supp. 1273 (D. Minn. 1997) (granting plaintiffs' motion to lift stay of discovery for the limited purpose of serving, but not enforcing, subpoenas requiring non-party businesses to preserve relevant documents which might be destroyed in the ordinary course of their document retention programs.) *But see*, <u>In re Fluor Corp. Secs. Litig.</u>, CA No. 97-734, 1999 U.S. Dist. LEXIS 22128 (C.D. Cal. Jan. 19, 1999) (denying motion to issue preservation subpoenas to third parties

because court found no authority for such in the PSLRA, third parties had not yet been identified, and plaintiffs did not show that discovery was necessary to preserve evidence.)

We conclude that issuing a protective subpoena is the most expeditious and least disruptive way to proceed in this matter. First, the Trustee may decide, as it has at least twice in the past, to voluntarily continue its motion seeking bankruptcy court approval of its document retention plan, in which case the subpoena would not actually have to be served. Second, the bankruptcy court, cognizant of the need of both Plaintiffs and Defendants herein to have discovery of those documents and the fact that this Court intends to rule promptly on the Motion to Dismiss, may decline to approve the proposed starting date for document destruction. Third, should the bankruptcy court accept the Trustee's plan, a preservation subpoena would accomplish Plaintiffs' goal without intruding on the prerogative of that court to control its own caseload and calendar. That is, by allowing a subpoena to be issued, we will not interfere with the bankruptcy court's authority to grant the Trustee's motion, but simply impose - for reasons relatively unimportant to the bankruptcy proceedings themselves - a moratorium on initiating the approved plan. Fourth, a subpoena which requires the Trustee

to merely preserve the documents for a brief period of time,[9] does not require production or any other action on its part, and does not permit depositions aimed at identifying specific documents, is not particularly onerous on the Trustee.[10] Finally, this Court may grant Defendants' Motion to Dismiss the Second Amended Complaint herein, thereby obviating any need for discovery.

**AND NOW**, this _20th_ day of December, 2005, Plaintiffs' Motion to Lift the PSLRA Stay of Discovery in Connection with Potential Destruction of Company Documents, filed at Docket No. 103, is **DENIED**. Defendants' Motion for Order Permitting Issuance of Subpoenas to Preserve Documents, Docket No. 106, is **GRANTED**, subject to the following modifications.

Since both parties have represented to the Court that they have an interest in maintaining the documents in question, counsel for Plaintiffs and Defendants shall jointly draft a preservation subpoena. That subpoena shall require the Trustee to preserve relevant documents, identified to the best of the

---

[9] We calculate that if the Court decides the motion to dismiss within 60 days of the date of this order as we intend, the Trustee will be required under the subpoena to postpone the starting date of its document retention plan for less than one month.

[10] Despite Plaintiffs' speculation that the Trustee would surreptitiously disregard a subpoena, the Court believes that the possibility of being held in contempt of court for failing to comply with the terms of a subpoena, coupled with the relatively light burden of complying for the short period of time envisioned, would encourage the Trustee to fully cooperate.

parties' ability, for a period of time to be agreed upon by the parties, taking into account the Court's intention to issue a decision on the pending Motion to Dismiss the Second Amended Complaint within 60 days of the date hereof.

The draft preservation subpoena shall not require the Trustee of the IT Group Litigation Trust to produce documents to either party until further notice of Court, nor shall it compel deposition of any person, pending the Court's approval of a case management order following resolution of the Motion to Dismiss.

The draft subpoena shall be submitted to this Court for approval not later than January 3, 2006, together with an order directing its issuance by the appropriate court.  Plaintiffs and Defendants may each concurrently submit a brief, not to exceed ten pages, stating their objections, if any, to the draft subpoena.  Should counsel for the parties desire, such briefs may propose alternative language to any portion of the draft subpoena to which the party objects.

_____
William L. Standish
United States District Judge

see attached distribution list

cc: Kwasi Asiedu
Law Offices of Kwasi Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503

Lionel Z. Glancy
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

Michael Goldberg
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Richard J. Pocker
Dickerson, Dickerson,
    Consul & Pocker
Rainbow Corporate Center
777 North Rainbow Boulevard
Suite 350
Las Vegas, NV 89107

Robert Zabb
Glancy & Binkow
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Email: info@glancylaw.com

David A. Becker
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Email: david.becker@lw.com

Mark A. Willard
Eckert, Seamans,
    Cherin & Mellott
600 Grant Street
44th Floor
Pittsburgh, PA 15219
Email: mwillard@eckertseamans.com

Peter C. Bernhard
Boyac, Bernhard & Leslie
3980 Howard Hughes Parkway
Suite 550
Las Vegas, NV 89109

Robert V. Campedel
Eckert, Seamans,
    Cherin & Mellott, LLC
600 Grant Street
44th Floor
Pittsburgh, PA 15219
Email: rcampedel@eckertseamans.com

Charles A. DeMonaco
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402
Email: cdemonaco@dmclaw.com

Kimberly L. Haddox
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402
Email: khaddox@dmclaw.com

Richard J. Federowicz
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402
Email: rfederowicz@dmclaw.com

(continued)

Brian D. Long
Chimicles & Tikellis
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899

E. Powell Miller
Miller Shea
1301 West Long Lake Road
Suite 135
Troy, MI 48098

Nicholas E. Chimicles
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041

Steven A. Schwartz
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041

Thomas L. Patten
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Email: tom.patten@lw.com

Joel B. Ard
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Larry K. Elliott
Cohen & Grigsby
11 Stanwix Street
15th Floor
Pittsburgh, PA 15222-1319
Email: lelliott@cohenlaw.com

Laurie B. Smilan
American Civil Liberties Union
    of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
Email: laurie.smilan@lw.com